Elaine Nguyen (SBN 256432)
WEINTRAUB & SELTH, APC
elaine@wsrlaw.net
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025
Telephone: 310-207-1494
Facsimile: 310-442-0660

Attorney for Debtor
IMAGINATION WORLDWIDE, LLC

Daren M. Schlecter
LAW OFFICE OF DAREN M. SCHLECTER
daren@schlecterlaw.com
1925 Century Pk E Ste 830
Los Angeles, CA 90067
Phone: 310-553-5747
Facsimile: 310-553-5487

Attorneys for Creditor
Stuck Productions, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

### LOS ANGELES DIVISION

| | |
|---|---|
| IMAGINATION WORLDWIDE, LLC<br><br>Debtor. | Case No: 2:15-bk-19378-RN<br><br>Chapter: 11<br><br>**STIPULATION BETWEEN DEBTOR AND STUCK PRODUCTIONS, LLC FOR**<br><br>**1. LIMITED RELIEF FROM THE AUTOMATIC STAY;**<br><br>**2. REJECTION OF SALES AGENCY AGREEMENT BETWEEN DEBTOR AND STUCK PRODUCTIONS, LLC DATED APRIL 18, 2013; AND**<br><br>**3. PLAN SUPPORT AGREEMENT** |

1

STIPULATION FOR LIMITED RELIEF FROM THE AUTOMATIC STAY AND ABANDONMENT OF
DEBTOR'S RIGHTS UNDER SALES AGENCY AGREEMENT

**TO THE HONORABLE COURT, ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

This Stipulation ("Stipulation") is entered into by and between Imagination Worldwide, LLC ("Debtor"), and Creditor Stuck Productions, LLC ("Stuck Productions"), by and through their respective attorneys of record, and pursuant to 11 U.S.C. §§362 and 554 do hereby agree and stipulate as follows:

### RECITALS

1. Debtor and Stuck Productions entered into a Sales Agency Agreement ("Agreement"), on or about April 18, 2013, a copy of which is attached as **Exhibit "A"**, for Debtor to act as the exclusive authorized sales agent of Stuck Productions, (who is a producer of movie-films), for the feature length motion picture STUCK (the "Picture").

2. Pursuant to the Agreement, the Debtor marketed the Picture and has negotiated and entered into the distributing agreements listed in **Exhibit "B"** hereof.

3. On June 11, 2015, (the "Petition Date"), the Debtor commenced the instant Bankruptcy case ("Bankruptcy Case"), by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code").

4. On October 28, 2015, the Debtor filed its Amended Schedule F, listing an undisputed, non contingent, liquidated claim in the amount of $50,000 in favor of Stuck Productions. On September 16, 2015, Stuck Productions filed its Proof of Claim ("Proof of Claim #2") in the amount of $221,000.00. The Debtor disputes this amount.

5. Debtor does not intend to include the Picture in the Reorganized Debtor's film library.

6. Stuck Productions desires the return of all rights and interest in the Picture and has made demand for same upon the Debtor.

7. In order to avoid the cost and uncertainty of litigation, the parties wish to resolve all disputes relating to the Agreement and enter into the agreement below regarding treatment of the Stuck Production Claim under the Debtor's Chapter 11 Plan of Reorganization.

NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE DEBTOR AND STUCK PRODUCTIONS AS FOLLOWS:

### STIPULATION

A. The Recitals set forth above are incorporated herein by this reference and shall be deemed a material part of this Stipulation.

B. Stuck Productions will amend its Proof of Claim #10 to reflect a claim amount of $50,000.00.

C. Stuck Productions shall have an allowed general unsecured claim under the Debtor's Chapter 11 Plan in the amount of $50,000.00 ("Unsecured Claim"). Stuck Productions' Unsecured Claim shall receive treatment equal to the claim treatment provided under the Debtor's Plan to other general non-priority unsecured creditors. This Stipulation does not require or contemplate that Debtor shall make a minimum distribution, whether expressed as a percentage or gross dollars, to general unsecured creditors including Stuck Productions under the Plan.

D. Stuck Productions is entitled to limited relief from the automatic stay pursuant to 11 U.S.C. §362, to proceed to take any and all acts necessary to market, sell and distribute the Picture and otherwise effectuate the exploitation of the Picture.

E. The Debtor rejects the Agreement pursuant to 11 U.S.C §365(a), and abandons pursuant to 11 U.S.C. §554 any and all rights under the Agreement to allow Stuck Productions to proceed with exploitation of the Picture.

F. Upon entry of the Court's Order approving this Agreement, Stuck Productions will hold all rights and interests in the distributing agreement listed in **Exhibit "B"**.

G. Support of the Plan. As long as this Stipulation has not been terminated, Stuck Productions agrees to:

i. facilitate the filing of this Stipulation with the Bankruptcy Court;

ii. support approval of this Stipulation and the Debtor's Disclosure Statement and Chapter 11 Plan provided the treatment of Stuck Productions' Unsecured Claims is consistent with or more favorable than the terms of Paragraphs D hereof and if it is not materially adversely affected by the terms of Debtor's Chapter 11 Plan;

iii. not object to, or otherwise commence any proceeding to oppose, alter, delay or impede the Plan, unless the claim treatment provided for in the plan is not consistent and/or materially alters the terms of this Stipulation;

iv. so long as its vote has been properly solicited pursuant to Sections 1125 and 1126 of the Bankruptcy Code and Rules 3017 and 3018 of the Bankruptcy Rules, Stuck Productions shall vote all claims, now or hereafter beneficially owned by such Stuck Productions, in favor of the Plan and timely return a duly executed ballot in connection therewith;

v. not withdraw or revoke its tender, consent or vote with respect to the Plan;

vi. not object to, or otherwise oppose the extension of the Debtor's exclusive right to file a plan of reorganization pursuant to Section 1121 of the Bankruptcy Code;

vii. not vote (to the extent entitled to vote) for, consent to, support or participate in the formulation of any chapter 11 plan other than the Plan;

viii. not directly or indirectly seek, solicit, negotiate or support any chapter 11 plan other than the Plan, or any sale or disposition of the assets of the Debtor, or any dissolution, winding up, liquidation, merger, transaction, reorganization or restructuring of the Debtor, if such action reasonably could be expected to prevent, delay or impede the successful implementation of the Plan;

ix. not support any such objection by a third party to the Plan; and

4

  x. not take any other action not required by law that is inconsistent with, or that would materially delay, the confirmation or consummation of the Plan.

H. <u>Entire Stipulation</u>. The terms of this Stipulation constitute the complete, exclusive, and final expression of the Parties' agreement relating to the specific subject matter set forth in this Stipulation. In this regard, the Parties intend the literal words of this Stipulation to control; and that all prior or contemporaneous oral or written negotiations, drafts, agreements, and other extrinsic communications shall have no significance or evidentiary effect, and may not be used in any manner to contradict or clarify the terms of this Stipulation irrespective of whether or not any Party to this Stipulation claims any ambiguities exist with respect to the provisions of this Stipulation.

I. <u>Severability</u>. Should it be determined by a court that any term of this Stipulation is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable term.

J. <u>Counterparts</u>. This Stipulation may be executed in counterparts, all of which shall be considered one and the same instrument, and shall become effective when both counterparts have been signed and delivered, and such signatures, which signatures may be exchanged by facsimile or .pdf and shall constitute original signatures for all purposes.

DATED: December 24, 2015          WEINTRAUB & SELTH, APC

                                   By: /s/ Elaine Nguyen
                                       Elaine Nguyen
                                       Attorney for Debtor
                                       IMAGINATION WORLDWIDE, LLC

DATED: December 23, 2015          LAW OFFICE OF DAREN M SCHLECTER

                                   By: [signature]
                                       Daren M. Schlecter
                                       Attorneys for Creditor Imagination Worldwide, LLC

# EXHIBIT A

April 18, 2013

Mr. Stuart Acher
STUCK PRODUCTIONS, LLC
7250 Franklin Ave. Unit 515
Los Angeles, CA 90046

E-mail address: stuartacher@gmail.com

Re: STUCK

Dear Stuart:

Pursuant to the agreement reached between us regarding the feature-length motion picture STUCK (the "Picture"), this letter will serve as the memorandum of understanding ("Agreement") between Stuck Productions, LLC ("Producer"), a California limited liability company and Imagination Worldwide, LLC ("Imagination"), a California limited liability company, whereby Imagination will act as the exclusive authorized sales agent of Producer for the Picture in the Territory during the Term upon the following terms and conditions:

Picture: STUCK, a feature-length motion picture shot on High Definition (HD) digital tape in color and in the English language with a running time of no less than eighty-four (84) minutes including end credits, written and directed by Stuart Acher, produced by Stuart Acher and Joel Michaely and starring Madeline Zima and Joel David Moore.

Term: Ten (10) years from delivery of the Picture as set forth herein. It is agreed that Imagination may at any time during the Term sign license agreements which extend beyond the Term but in no event shall such license agreement(s) exceed ten (10) years following the end of the Term. Notwithstanding the foregoing, if Imagination does not conclude license agreements by May 15, 2015 which result in a minimum of two hundred thousand U.S. dollars (US$200,000) of Gross Receipts, all unsold rights in the Territory will revert back to Producer upon request. In such event, Producer agrees to honor all existing agreements and Imagination will be entitled to its Distribution Fee for all agreements in which Imagination entered into prior to May 15, 2015.

Territory: The World excluding the United States, Canada, their possessions and territories including ships, hotels, military installations and airlines flying the flag of any country in the Territory.

Distribution Rights: All media except merchandising, soundtrack, prequels, sequels and spinoffs and print and electronic publishing rights which are reserved by Producer. Notwithstanding the foregoing, if Producer produces a sequel based on the Picture, then Imagination shall have a right of first negotiation to act as the authorized sales agent for such sequel in the Territory.

Imagination Distribution Fee: Twenty percent (20%) of all Gross Receipts. Any distribution fee payable to Imagination hereunder must be inclusive of any sub-distributor's and/or sub-licensee's fees. Notwithstanding the foregoing, solely in the territories of Latin America, Turkey and Poland, provided that Imagination has exhausted all reasonable efforts to enter into distribution/license agreements regarding the Picture without the use of a sub-distributor and/or a sub-licensee, then the parties hereto agree that with respect to these territories only, Imagination's Distribution Fee will not be inclusive of any sub-distributor's and/or sub-licensee's fees. There shall be no assignment of

overall contract without prior approval of Producer.

Guarantee: Imagination agrees that Producer will receive a total of no less than sixty-five thousand U.S. dollars (US$65,000) (the "Guarantee") by no later than the date which is twelve (12) months after the date which Producer authorizes Imagination to release the Picture in the Territory (the "Territorial Availability Date) (which Territorial Availability Date shall occur no later than January 1, 2014), if not already paid as Producer Share as more fully described below. Notwithstanding the foregoing, Imagination agrees that fifty percent (50%) of the Guarantee will be payable by the date which is no later than six (6) months after the Territorial Availability Date.

Recoupment: First, Imagination will deduct its Distribution Fee from Gross Receipts defined as all receipts in connection with the exploitation of the Picture. Next, it will recoup all actual, direct, verifiable, third-party out-of pocket Distribution Expenses advanced for items directly related to the Picture, including, but not limited to, creation of artwork, trailer (if necessary), promos, ads, freight/messenger, festival expenses, delivery items and fees, all required delivery items which are not delivered or are not of technically acceptable quality (after giving Producer and opportunity to delivery or correct). Next, a one-time, flat $25,000 Market Fee provided, however, that Imagination attends and promotes the Picture at Cannes 2013, AFM 2013 and Berlin 2014. Furthermore, Producer and Imagination have agreed that, if necessary, Imagination will advance the cost of Producer's errors and omissions (E&O) policy and recoup said amount as a Distribution Expense. Producer has confirmed that it will be delivering a High Definition (HD) master to Imagination. Total Distribution Expenses including the Market Fee will not exceed fifty thousand U.S. dollars (US$50,000) (the "Expense Cap") excluding the cost of any required taxes and an E&O policy if requested by Producer as well as the cost of creating any required delivery items which are not delivered by Producer or are not of technically acceptable quality after first giving the Producer the opportunity to deliver or correct the technical quality. Notwithstanding the foregoing, if Producer is able to deliver a trailer which is acceptable to Imagination prior to April 31, 2013, the Expense Cap will be reduced to forty-five thousand U.S. dollars ($45,000.) The remaining amounts of Gross Receipts will be "Producer's Share" and will be paid to Producer per the Accounting terms below.

Delivery Date: No later than June 30, 2013. Imagination will have thirty (30) days to accept delivery or notify Producer of missing or defective delivery material. Any objections not made within said thirty (30) days after Imagination's receipt will be deemed accepted. The date on which Imagination notifies Producer it has accepted all delivery material (or thirty days after Imagination's receipt of such delivery if Imagination does not disapprove a delivery item) will be known as the "Acceptance of Delivery Date."

Accounting: Imagination will send accounting statements to Producer on a quarterly basis for the first three (3) years after the Acceptance of Delivery Date, semi-annually for the next three (3) years and annually for the remainder of the Term. All statements will be sent to Producer within sixty (60) days following the end of the applicable accounting period. Books of account shall be kept in Los Angeles. Producer shall have the right to audit the books and records of Imagination as it relates to the Picture. In the event an audit is conducted and it discloses an underpayment of 10% or more, Imagination shall reimburse Producer all reasonable audit costs along with any underpayment. Imagination shall supply Producer with copies of all executed contracts within 30 days after Producer's request therefor. Producer has confirmed the Picture was produced with Screen Actors Guild (SAG) members. Imagination will reserve (at the same time Imagination takes its Distribution Fee) from Producer's Share an amount not to exceed five percent of Gross Receipts for payment of Producer's residuals, pension and welfare obligations and Imagination will pay directly SAG such

residuals as directed by Producer. Imagination shall provide Producer with an accounting of each such payment. In the event that the reserve exceeds the amount required to be paid to SAG for residuals, the excess shall be paid to Producer as Producer's Share. Notwithstanding the foregoing, in the event that Producer pays such residuals directly to SAG (and also provides Imagination with written proof (e.g., a receipt) substantiating Producer's payment to SAG of such residuals), then Imagination shall reimburse Producer the actual amount of residuals paid by Producer to SAG from the reserve, and in the event the reserve exceeds the reimbursement paid to Producer for such SAG residuals, then the excess shall be paid to Producer as Producer's Share.

Disputes will be resolved by final and binding IFTA arbitration with attorneys' fees and costs award by arbitrator to the successful party. Imagination warrants that it has the capacity to enter this contract, is not insolvent or in danger of bankruptcy.

Imagination will consult with Stuart Acher ("Acher") in good faith on marketing plans before artwork commissioned and marketing campaign has begun. Imagination can edit the Picture to meet censorship requirements and/or time restraints. Imagination shall not do any other editing of Picture or change of title without Producer's prior written approval. In addition, with respect to any distribution/license agreements entered into by Imagination with respect to the Picture, Imagination agrees to include a paragraph in said agreements which prohibits said distributors and/or licensees from editing the Picture, provided, however that said distributors and/or licensees shall have the right to change the title of the Picture and/or the right to edit the Picture in order to meet any censorship requirements and/or time restraints. If Imagination defaults, Producer shall have right to terminate the contract and regain all rights to the Picture in addition to monetary damages. Imagination has ten (10) days notice to cure any default before termination can be exercised. Imagination shall provide Producer with at least ten (10) days written notice of any alleged Producer default and an opportunity to cure before taking any action to enforce its rights. Producer shall have the right to terminate this Agreement and cause all rights herein conveyed to Imagination to revert to Producer in the event that Imagination files a petition in bankruptcy or consents to an involuntary petition in bankruptcy or to any reorganization under Chapter 11 of the Bankruptcy Act.

Both parties agree that Imagination's long form agreement may be entered in the future, pursuant to good faith negotiations incorporating the terms of this Deal Memo. Unless and until such an agreement is finalized, the terms hereof, supplemented by those standard terms and conditions which are customary in such agreements in the motion picture industry such as Producer's representations, warranties and indemnifications shall govern this Agreement.

Please acknowledge your understanding and acceptance of these terms and conditions by signing below.

Sincerely,

_____
Lawrence Goebel
President and CEO
IMAGINATION WORLDWIDE, LLC

_____
Stuart Acher
STUCK PRODUCTIONS, LLC

# EXHIBIT B

Imagination Worldwide, LLC
Producers Statement
## Stuck Productions LLC
### Stuck
Report 6
As of June 11 2015

| Territory | | Gross Sales | Outstanding | Prior Period | Current Period | To Date |
|---|---|---|---|---|---|---|
| **Foreign Sales** | | | | | | |
| Australia | Accent | 10,000.00 | - | 10,000.00 | - | 10,000.00 |
| Norway | Another World Entertainment | 6,000.00 | - | | 6,000.00 | 6,000.00 |
| Benelux | Bridge Entertainment | 8,000.00 | - | 8,000.00 | - | 8,000.00 |
| South Africa | Ster Kinekor - video | 5,000.00 | - | 5,000.00 | - | 5,000.00 |
| Turkey | Umut Sanat | 2,400.00 | - | 2,400.00 | - | 2,400.00 |
| China | Youka, Inc. | 3,000.00 | - | 3,000.00 | - | 3,000.00 |
| Portugal | Zon Lusomundo | 5,000.00 | - | 5,000.00 | - | 5,000.00 |
| | | | | | | |
| Sub-total Foreign Sales | | 39,400.00 | - | 33,400.00 | 6,000.00 | 39,400.00 |

| | | | |
|---|---|---|---|
| Producer's Share Foreign Sales | 80.0% | | 31,520.00 |
| Less Expenses - See Statement of Expenses | | | (47,090.66) |
| SAG Reserve for Residuals 5% of Gross Sales | | | (1,970.00) |
| Reduce SAG Reserve | | | 1,970.00 |
| Advances Paid | | | (15,000.00) |
| Advances Due | | | (50,000.00) |
| Net Due | | | (80,570.66) |



# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled **STIPULATION BETWEEN DEBTOR AND STUCK PRODUCTIONS, LLC FOR  1. LIMITED RELIEF FROM THE AUTOMATIC STAY; 2. REJECTION OF SALES AGENCY AGREEMENT BETWEEN DEBTOR AND STUCK PRODUCTIONS, LLC DATED APRIL 18,2013; AND 3. PLAN SUPPORT AGREEMENT** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

1. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **12/24/2015**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

M Hope Aguilar     hope@business-affairs.tv, hope@neuvilleLaw.com
Kenneth G Lau     kenneth.g.lau@usdoj.gov
Elaine Nguyen     elaine@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com
Daren M Schlecter     daren@schlecterlaw.com, assistant@schlecterlaw.com
James R Selth     jim@wsrlaw.net, jselth@yahoo.com;erika@wsrlaw.net;vinnet@ecf.inforuptcy.com
United States Trustee (LA)     ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub     dan@wsrlaw.net, erika@wsrlaw.net;vinnet@ecf.inforuptcy.com

2. **SERVED BY UNITED STATES MAIL**:
On **12/24/2015**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

3. **SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **12/24/2015**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Personal delivery to Chambers of Hon. Richard Neiter, United States Bankruptcy Court, Los Angeles Division

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| **12/24/2015** | Jamie Barrios | /s/ Jamie Barrios |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**