Daniel J. Weintraub – Bar #132111
James R. Selth – Bar #123420
Elaine V. Nguyen – Bar #256432
WEINTRAUB & SELTH, APC
11766 Wilshire Blvd., Suite 1170
Los Angeles, CA 90025
Telephone: (310) 207-1494
Facsimile: (310) 442-0660

Attorneys for Debtor and Debtor-In-Possession,
IMAGINATION WORLDWIDE, LLC

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>IMAGINATION WORLDWIDE, LLC,<br><br>Debtor and Debtor in Possession. | Case No. 2:15-bk-19378-RN<br><br>Chapter 11<br><br>**STIPULATION BETWEEN DEBTOR AND BUS DRIVER, LLC FOR**<br><br>**1. LIMITED RELIEF FROM THE AUTOMATIC STAY; AND**<br><br>**2. REJECTION OF SALES AGENCY AGREEMENT BETWEEN DEBTOR AND BUS DRIVER, LLC DATED APRIL 18, 2013** |

**TO THE HONORABLE RICHARD M. NEITER, UNITED STATES BANKRUPTCY JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL PARTIES IN INTEREST:**

This Stipulation ("Stipulation") is entered into by and between Imagination Worldwide, LLC ("Debtor"), and The Bus Driver LLC ("Bus Driver"), pursuant to 11 U.S.C. §§362 and 554 do hereby agree and stipulate as follows:

### RECITALS

1. Debtor and Bus Driver entered into a Sales Agency Agreement ("Agreement"), on or about July 15, 2014, a copy of which is attached as **Exhibit "A"**, for Debtor to act as the exclusive authorized sales agent of Bus Driver, (who is a producer of movie-films), for the feature length motion picture THE BUS DRIVER (the "Picture").

2. On June 11, 2015, (the "Petition Date"), the Debtor commenced the instant Bankruptcy case ("Bankruptcy Case"), by filing a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101 *et seq.* (the "Code").

3. As of the date of this Stipulation, Bus Driver owes the Debtor the sum of $10,000.00 for recoupment of out of pocket expenses advanced by the Debtor pursuant to the terms of the Agreement.

4. Bus Driver desires the return of all rights and interest in the Picture and has made demand for same upon the Debtor. Debtor does not intend to include the Picture in the Reorganized Debtor's film library. The Picture has generated no gross sales to date. The Debtor believes the Picture is of no value or *de minimis* value to the estate and this reorganization.

5. In order to avoid the cost and uncertainty of litigation, the parties wish to resolve all disputes relating to the Agreement and enter into the agreement below.

**NOW, THEREFORE, IT IS HEREBY STIPULATED BETWEEN THE DEBTOR AND BUS DRIVER AS FOLLOWS:**

-2-

## STIPULATION

A. The Recitals set forth above are incorporated herein by this reference and shall be deemed a material part of this Stipulation.

B. Within two (2) days of execution of this Stipulation, Bus Driver shall cause to be paid to the Debtor the amount of $10,000.00 for the out of pocket expenses incurred by the Debtor ("Settlement Sum"). The Settlement Sum shall be delivered via federal Express to Debtor's bankruptcy counsel and shall not be disbursed except upon further order of the Court. Payment of the Settlement Sum shall be in full satisfaction of any and all claims of the Debtor against Bus Driver, provided however that if the Court does not approve this Stipulation, Debtor's counsel shall return such sum to Bus Driver.

C. After payment of the Settlement Sum and approval of this Stipulation by the Court, Bus Driver is entitled to limited relief from the automatic stay pursuant to 11 U.S.C. §362, to proceed to take any and all acts necessary to market, sell and distribute the Picture and otherwise effectuate the exploitation of the Picture.

D. Following payment of the Settlement Sum and upon the entry of an order of this Court approving this Stipulation, the Debtor rejects the Agreement pursuant to 11 U.S.C §365(a), and abandons pursuant to 11 U.S.C. §554 any and all rights under the Agreement to allow Bus Driver to proceed with exploitation of the Picture.

E. Within 5 business days of the entry of a final non appealable Order approving this Stipulation, the Debtor shall return to Bus Driver all existing marketing, sales, and display items, including, but not limited to, posters, displays, flyers, giveaways that depict or reference the Picture, key art, alternate key art, trailers, sizzle reels, DVDs, Blue Rays, masters, hard drives, and any and all sound or visual components related to the Picture.

F. Within 5 business days of the entry of a final non appealable Order approving this Stipulation, the Debtor shall return all contracts the Debtor entered into on behalf of the Picture or Bus Driver, including but not limited to contracts with vendors.

G. Bus Driver does not and shall not have a claim against the Debtor or the Debtor's estate. To the extent the Bus Driver may not or at a later date believe it has a claim against the estate, Bus Driver hereby waives and releases such claim. Following payment of the settlement sum and upon the entry of an order of this court approving the stipulation, the debtor shall sign a full release in favor of the bus driver releasing any and all claims now, in the past and in the future in favor of the bus driver; and the debtor further relinquishes any rights and claims whatsoever now and in the future to the picture.

H. <u>Entire Stipulation</u>. The terms of this Stipulation constitute the complete, exclusive, and final expression of the Parties' agreement relating to the specific subject matter set forth in this Stipulation. In this regard, the Parties intend the literal words of this Stipulation to control; and that all prior or contemporaneous oral or written negotiations, drafts, agreements, and other extrinsic communications shall have no significance or evidentiary effect, and may not be used in any manner to contradict or clarify the terms of this Stipulation irrespective of whether or not any Party to this Stipulation claims any ambiguities exist with respect to the provisions of this Stipulation.

I. <u>Severability</u>. Should it be determined by a court that any term of this Stipulation is unenforceable, that term shall be deemed to be deleted. However, the validity and enforceability of the remaining terms shall not be affected by the deletion of the unenforceable term.

J. **Power and Authority.** Each party, if an entity, is duly organized, validly existing, good standing under the laws of its jurisdiction of organization and such party ha: requisite corporate, partnership, or limited liability company power and authority into this Agreement and to perform its respective obligations under this Agreeme

//

K. **Counterparts.** This Stipulation may be executed in counterparts, all of which shal considered one and the same instrument, and shall become effective when both counterparts have been signed and delivered, and such signatures, which signatur exchanged by facsimile or .pdf and shall constitute original signatures for all pur

Dated: January 6, 2016

WEINTRAUB & SELTH, APC

/s/ Daniel J. Weintraub
Daniel J. Weintraub
Counsel for Debtor and Debtor in Posse
IMAGINATION WORLDWIDE, LLC

Dated: January 7, 2016

THE BUS DRIVER, LLC

_____
Rick Finkelstein, Managing Partner

Dated: January 7, 2016

THE BUS DRIVER, LLC

_____
Steve Daron, Managing Partner

# EXHIBIT A



July 15, 2014

Mr. Rick Finkelstein
Managing Partner
The Bus Driver LLC
3423 N. Hiatus Road
Sunrise, Florida 33351

Re: THE BUS DRIVER (the "Picture")

Dear Rick:

Pursuant to the agreement reached between us with respect to the feature length motion picture THE BUS DRIVER (the "Picture"), this letter will serve as the memorandum of understanding ("Agreement") between The Bus Driver LLC ("Producer"), a Florida limited liability company, and Imagination Worldwide, LLC ("Imagination"), a California limited liability company, whereby Imagination is the exclusive authorized sales agent of Producer for the Picture in the Territory (defined below) and during the Term (defined below), upon the following terms and conditions:

    1.    PICTURE: The Picture was shot on High Definition (HD) digital tape with a synchronized audio soundtrack, has a final running time of not less than eighty-eight (88) minutes in length including main and end credits and is of first class, commercially acceptable technical quality. The screenplay of the Picture was written by Jay Black and Brian Herzlinger based on an original screenplay entitled Moments of Silence created and written by Steve Daron, the Picture was produced by Rick Finkelstein, Steven Chase and Steve Daron, was directed by Brian Herzlinger and stars Steve Daron, Steven Chase and Robert Forster.

    2.    TERM: The Term commenced on July 15, 2014 and will expire fifteen (15) years after the Acceptance of Delivery Date (as defined in paragraph 6 below) confirming Imagination's complete approval of all items in its standard delivery schedule (Schedule A.) It is understood that Imagination may at any time during the Term sign license agreements which extend beyond the Term.

    3.    TERRITORY: The World

    4.    RIGHTS: Producer hereby appoints Imagination as its sole authorized sales agent to negotiate and execute license agreements on Producer's behalf during the Term in the Territory for all rights in all media to the Picture and any part of the Picture hereof on an exclusive and irrevocable basis for distribution, public display, exhibition, performance and reproduction in all media and in all rights whether known or hereafter developed including, without limitation, theatrical, non-theatrical (including airlines, military installations, hotels, ships at sea, diplomatic and corporate compounds of nations in the Territory), video devices including but not limited to cassette, videodisc, DVD, HD DVD, Blu-Ray, VHS and CD-ROM for home and commercial use, television including but not limited to pay tv, pay per view, cable, terrestrial, satellite and free tv, internet, video on demand (VOD), near video on demand (NVOD), subscription video on demand

Imagination Worldwide, LLC
9107 Wilshire Boulevard, Suite 625
Beverly Hills, California 90210
Tel: (310) 888-3494 • Fax: (310) 859-7173
www.imagination-llc.com

(SVOD), transactional video on demand (TVOD) and advertising video on demand (AVOD) (all VOD also known as Demand View) including wireless and digital transmissions via broadband and/or the internet for interactive, including streaming, electronic sell-through (EST) and/or download to own (DTO) and download to burn purposes and mobile devices, (e.g. cell phones, smart phones, tablets), (the "Rights".) Furthermore, it is agreed that Imagination has the right of first negotiation and last refusal with Producer regarding the sales agency of sequel, prequel and remake rights to the Picture as well as all ancillary rights owned and/or controlled by Producer including merchandising, music publishing, soundtrack album and novelization rights.

   5.   DIVISION OF GROSS RECEIPTS: Gross Receipts are defined as all non-refundable monies or credits from distributors, licensees, exhibitors, broadcasters and others once actually received by or credited to Imagination in U.S. dollars from all license fees, royalties and non-refundable guarantees derived from all licenses, sales and any other exploitation of the Picture's rights ("Gross Receipts."). Gross Receipts will be accounted as follows:

   (a) Imagination shall first deduct and retain its fee of twenty percent (20%) of Gross Receipts once actually received by or credited to a U.S. account for the benefit of Imagination in the U.S. from all distribution licenses and/or exploitation of the Picture in the Territory outside of the U.S., its possessions and territories ("Foreign Territory"). Next, Imagination shall then deduct and retain its fee of fifteen percent (15%) of Gross Receipts once actually received by or credited to a U.S. account for the benefit of Imagination in the U.S. from all distribution licenses and/or exploitation of the Picture in the Territory from the United States, its possessions and territories ("Domestic Territory").

   (b) Next, Imagination will deduct and retain from the remaining Gross Receipts a one-time flat fee of thirty thousand U.S. dollars ($30,000) to cover a portion of Imagination's general out-of-pocket expenses (e.g., travel, hotels, temporary personnel, sales office, entertainment, equipment rentals, sales trips, public relations fees and expenses, etc.) incurred in connection with the various sales markets where the Picture will be offered to potential licensees ("Market Fee".)

   (c) Next, Imagination will deduct and retain from the remaining Gross Receipts an amount equal to One Hundred Percent (100%) of all actual, direct, third-party out-of-pocket expenses specifically charged to the Picture, including but not limited to creative advertising/key art, trade paper advertising, creation of a trailer and/or promo reel(s)/tv spots, screening(s), a publicist (if necessary), Imagination personnel attending a film festival or festivals (as opposed to a sales market) where the Picture is being exhibited, all freight, courier telecommunication expenses, any expenses and fees incurred by Imagination regarding the delivery of the Picture to Imagination and/or to licensees as well as all outside legal costs related specifically to this Agreement and agreements with licensees. Producer has confirmed that it will advance the cost of creating the key art and trailer. Distribution Expenses also include, but are not limited to, Imagination's costs of creating items listed in Schedule A which Imagination agrees to advance if the items 1) are not delivered in a timely manner to Imagination by Producer or 2) are of insufficient technical quality and need to be corrected in order to be technically acceptable as well as 3) the cost of the E&O policy (if Imagination advances on behalf of Producer if necessary) described in Paragraphs 6 and 12 below. All costs, fees and expenses described in sub-paragraphs 5(b) and 5(c) are Distribution Expenses ("Distribution Expenses.")

   (d) Next, Producer shall be entitled to One Hundred Percent (100%) of the remaining balance of Gross Receipts, if any, ("Producer Share") and shall be paid to Producer in accordance with Paragraph 9 below, provided Producer has not breached a material term or warranty hereunder and subject to Producer's compliance with all terms and conditions hereunder, including, without limitation, timely delivery. Producer will advise Imagination in a timely manner of Producer's collection/banking coordinates, i.e. where Imagination should transfer Producer share, if any, when due.

6. **DELIVERY:** On or before September 30, 2014, Producer shall deliver to Imagination, at Producer's expense, all those items referred to in Schedule A subject to good faith discussion, said items being of first class, technically acceptable quality according to Fotokem/Fototronics ('Fotokem"), Imagination's Los Angeles laboratory. Imagination will have thirty (30) days to accept delivery or notify Producer of missing and/or defective delivery material. Imagination's final acceptance of delivery of the Picture ("Acceptance of Delivery Date") will include a) complete execution of this Agreement, b) Imagination's satisfactory completion of due diligence of the Picture, including but not limited to its review and approval of Producer's chain of title to all elements of the Picture, c) approval by Imagination and clearance of the Picture's final title by a film industry known legal firm and title clearance firm, d) if and when necessary, proof of Producer's errors and omissions (E&O) insurance as further described in Paragraph 12 below and confirmation of Imagination being listed as an additional insured on said policy, e) receiving all music clearances, Producer's execution of a Mortgage of Copyright (if required), Short Form Assignment of Rights and Certificate of Origin and f) Imagination receiving a fully executed Laboratory Access Letter to all elements located at Fotokem (including Fotokem's written approval of the technical quality of all delivery elements located at Fotokem) as well as Imagination receiving a fully executed Laboratory Access Letter from a laboratory approved by Imagination to all delivery elements not located at Fotokem.

7. **IMAGINATION'S RIGHTS:** In addition to the other rights granted herein, Imagination and its licensees shall have the right in any manner without limitation, to advertise, promote, publicize, market, sublicense, assign, and otherwise exploit the Picture (and its title), in its sole discretion, in connection with the exercise of any and all rights represented hereunder. Imagination and its licensees also shall have the right to re-edit, re-mix add to and/or subtract from and otherwise make changes in and to the Picture and its title as required for the exploitation of the Picture for the following purposes including but not limited to censorship purposes, television timing, scheduling, commercial break requirements and dubbing and/or sub-titling. Imagination and its licensees shall have the right to add appropriate Imagination and/or licensees credits to the Picture (although credits on the Picture, including copyright notice, may not be deleted.) Imagination agrees that it will deliver to all licensees and require said licensees to adhere to the credits, billing block and credit obligations that Producer delivers to Imagination. Imagination agrees that it will adhere to all of the Picture's credit obligations in all paid advertising, publicity, promotional and marketing materials subject to customary industry exclusions including but not limited to ads of eight column inches or less, congratulatory ads and teaser ads. Any inadvertent mistake or omission by Imagination or by one or more of its licensees shall not be deemed a breach of this Agreement, but Imagination will use its best efforts to prospectively cure said mistake or omissions following receipt of Producer's written notice of the error or omission. Any cost incurred for any such changes will not be treated as Distribution Expenses but paid for by Imagination.

8. **PRODUCER'S CONSULTATION RIGHTS:** Imagination shall consult with Producer regarding the Picture's sales and marketing issues as well as creation of the key art and the trailer. Notwithstanding the foregoing, Imagination shall have the sole right to determine the final version of the key art and trailer as well as the course of the marketing of the Picture including but not limited to the sole right to determine the manner, time, means and media of marketing the Picture.

9. **ACCOUNTING:** Subject to the Residuals Reserve ("Reserve") described below, Imagination will report to Producer and make appropriate payments to Producer on a calendar

Page Three    THE BUS DRIVER

quarterly basis commencing upon the Acceptance of Delivery Date and continuing until two (2) years after the Acceptance of Delivery Date. Next, Imagination will report to Producer and make appropriate payments to Producer on a semi-annual basis for the next two (2) years and then annually during the remainder of the Term. Such statements shall be rendered within sixty (60) days after the last day of the applicable accounting period. Producer will have the standard right to audit Imagination's books at its office in Los Angeles, California to the extent they relate to the Picture, upon thirty (30) days written notice to Imagination, but not more often than once every twelve (12) months, with a twenty-four (24) month finality period applying to each statement. On a confidential and non-precedent basis, Imagination agrees to instruct all licensees to make appropriate license fee payments and/or royalty payments to a separate collection account ("Collection Account") at City National Bank in Beverly Hills, California. Said account will have an authorized signatory or signatories for Producer and for Imagination. No funds may be withdrawn from the Collection Account without one (1) authorized signatory from Producer and one (1) authorized signatory from Imagination. Producer and Imagination mutually agree that Imagination is entitled to receive funds in the Collection Account equal to the amounts described in Paragraph 5 (a), (b) and (c) as payment for its Domestic and Foreign distribution fees, Market Fee and/or Distribution Expenses. Notwithstanding the foregoing, Producer and Imagination mutually agree to withdraw funds more frequently than on a calendar quarterly basis in order for Imagination to recoup its Market Fee and Distribution Expenses.

In order to assure the continued non-disturbance of Imagination's exploitation rights according to Paragraph 10 below, a Reserve shall be deducted from the Producer's Share based on guild residuals and associated costs that are or will be owed in connection with the current or past monthly, quarterly, semi-annual or annual reports. The Reserve shall be retained until either:

    a)    Imagination receives written confirmation from the applicable guild(s) that reporting and residuals are current and then Imagination will release to Producer that portion of the Reserve allocated to the period reported and paid to the guild(s), or

    b)    Notwithstanding Producer's obligation under Paragraph 10 to properly and timely report to and pay residuals to the applicable guild(s), Imagination on behalf of Producer will agree to forward to the applicable guild(s) (working with their designated payroll company) the reports and residuals payments based on the media allocations that Producer and the guild(s) have agreed upon.

In the event that Producer authorizes Imagination to pay the residuals on its behalf and the Reserve amount is insufficient to pay the residuals and associated costs due, Producer agrees to reimburse Imagination immediately for any costs incurred that were not covered by the Reserve.

    10.    <u>PRODUCER'S REPRESENTATIONS AND WARRANTIES</u>: Producer represents and warrants that it has the right and authority to enter into this Agreement and grant the exclusive representation rights herein; that the Producer has properly registered the Picture (or will register the Picture prior to delivery to Imagination) with the U.S. Copyright Office and the Picture's copyright is protected under U.S. copyright law; that there are (or as of the date of delivery will be) no outstanding claims or potential claims against the Picture or against any party that may encumber any of the rights granted by Producer in this Agreement; that the Picture or any part or right therein is not subject to a security interest, lien, claim, lawsuit, or has been pledged as collateral for other than production financing purposes, or other legal entanglement or encumbrance, or any other agreements of any kind, inconsistent with or which could tend to diminish the rights represented by Imagination hereunder; that the Producer has obtained all

necessary consents and clearances from all sources for Imagination's free enjoyment of the rights herein granted; Imagination's free exercise of the rights granted herein shall not violate the rights of any other person or entity, such as by way of example, defamation, copyright, trademark or publicity rights and that no monies will become due from Imagination to any person, party, organization, guild or society by Imagination's exercise of the rights granted hereunder. Producer shall be solely responsible for payments of residuals, dues, overages, unpaid production costs, performance fees, license fees that might arise from Imagination's exercise of the rights granted herein, including but not limited to any fees, residuals, tax, escalations or penalties due or demanded by the Screen Actors Guild or other union or professional society or governmental body. Furthermore, Producer represents and warrants that the Picture has not been previously offered for license anywhere in the Territory by itself and/or by another sales agent.

11. <u>INDEMNIFICATION:</u> Producer shall indemnify, defend and hold Imagination harmless including but not limited to reasonable attorney's fees and costs it incurs from and against any and all harm suffered by Imagination from any claim of any nature, demand, obligation and/or litigation of any kind whatsoever arising from or related to any breach of Producer's representations, warranties or obligations made in this Agreement, including but not limited to any and all claims or demands arising from Imagination's reliance on its right to proceed with distribution and exploitation of the Picture. Imagination shall indemnify, defend and hold Producer harmless including but not limited to reasonable attorney's fees and costs it incurs from and against any and all harm suffered by Producer from any claim of any nature, demand, obligation and/or litigation of any kind whatsoever arising from or related to any breach of Imagination's representations, warranties or obligations made in this Agreement.

12. <u>ERRORS & OMISSIONS POLICY:</u> Pursuant to Paragraph 6 above, Producer shall also obtain and deliver to Imagination at Producer's expense, a standard policy of errors and omissions insurance with limits of not less than one million U.S. dollars (US$1,000,000 for any claim arising out of a single occurrence) and three million U.S. dollars (US$3,000,000 for all claims in the aggregate) and a deductible of no more than ten thousand U.S. dollars (US$10,000), which shall be in full force and effect for no less than the first three (3) years of the Term. Imagination and its designated licensees shall be named additional insureds on this policy. Notwithstanding the foregoing, Imagination will advance the cost of the E&O policy on behalf of Producer if necessary and to recoup this cost as a Distribution Expense.

13. <u>NO INJUNCTIVE RELIEF:</u> Producer waives any right to equitable or injunctive relief and in the event of any breach or alleged breach by Imagination, agrees to only seek remedies at law for economic damages. Subject to Paragraph 21 below, Producer may not terminate or rescind this Agreement for any reason nor enjoin or judicially limit distribution of the Picture in the Territory.

14. <u>NOTICE:</u> Except as provided otherwise herein, notice shall be given in writing between the parties by fax, e-mail or first class mail via air courier at the most recent address provided in writing by the parties. Notice sent by fax and e-mail shall be deemed given the day of transmission, confirmed by the sending facsimile machine record, provided a copy also is deposited in the mail for first class delivery via air courier, properly addressed as provided herein with postage prepaid.

Page Five    THE BUS DRIVER

15. <u>INTEGRATION</u>: This Agreement comprises the entire understanding between the parties and supersedes and integrates all prior negotiations and agreements. Any changes, amendments or modifications of this Agreement shall not be binding unless made in writing and signed by both parties.

16. <u>CHOICE OF FORUM</u>: Any actions arising between the parties from obligations, rights, alleged breaches or warranties in this Agreement shall be brought in binding arbitration in Los Angeles, California pursuant to the Independent Film and Television Alliance ("IFTA") (formerly AFMA) Rules for International Arbitration then in effect, and if IFTA no longer provides arbitration services, then the arbitration shall be conducted in Los Angeles before a single arbitrator pursuant to the commercial rules of the American Arbitration Association then in effect. The prevailing party shall be entitled to reimbursement of its reasonable legal fees and costs. This contract shall be construed and interpreted in plain English as if drafted by both parties and the arbitrator shall not modify or reform the express terms except as permitted herein. If any part or term of this Agreement is found to be contrary to applicable law, it shall be deemed modified or deleted in a manner to comply with the law and to give the greatest possible effect to the expressed intent of the parties. The arbitrator shall resolve any disputes in strict compliance with California law, or when such law is pre-empted, U.S. federal law.

17. <u>WAIVER:</u> A waiver of any provision of this Agreement shall not be deemed a waiver of any other provision or waiver of a similar future occurrence.

18. <u>NO OBLIGATION TO DISTRIBUTE:</u> Nothing herein shall be construed as a representation of the commercial viability of the Picture, nor a projection or promise that the Picture will achieve any particular sales results. Imagination shall distribute, market and promote the Picture in its sole discretion, except with the limitations of this Agreement.

19. <u>ENTIRE AGREEMENT:</u> Except as expressly set forth herein, this Agreement (and any Exhibits/Schedules attached thereto, is the sole and entire agreement between the parties hereto with respect to the Picture and supersedes all prior representations, negotiations, promises, understandings or agreements, whether oral or written, between the parties with respect to the subject matter hereof.

20. <u>AUTHORITY:</u> The parties signing this Agreement warrant and represent that they have the right and authority to bind the respective business entities to all terms, warranties and obligations contained herein.

21. <u>DEFAULT/TERMINATION:</u> It is agreed that if Imagination a) materially defaults on any of its representations and/or warranties which default remains uncured for a period of fifteen (15) business days after receipt of Producer's written notice of default or alleged default, or b) becomes insolvent or bankrupt during the Term herein or c) is no longer active in the film sales agency business, Producer shall have the right but not the obligation, exercisable upon prior written notice within thirty (30) days thereof, to terminate this Agreement. For the avoidance of doubt, any such termination shall not cause the termination of any agreements with distributors/licensees concluded prior to such termination and Imagination shall be entitled to collect its fees as specified in paragraph 5(a) as well any previously unrecouped Distribution

Expenses. Furthermore, it is agreed that if Producer defaults or breaches any of its indemnifications, representations and/or warranties to Imagination, Imagination shall have the right but not the obligation exercisable upon prior written notice within thirty (30) days thereof, to terminate this Agreement and reserves the right to seek economic damages.

Please acknowledge your acceptance of these terms and conditions by signing below.

Sincerely,

_____
Lawrence Goebel
President & CEO
IMAGINATION WORLDWIDE, LLC

_____
Rick Finkelstein
Managing Partner
THE BUS DRIVER LLC

_____
Steve Daron
Managing Partner
THE BUS DRIVER LLC

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

11766 Wilshire Blvd., Suite 1170, Los Angeles, CA 90025

A true and correct copy of the foregoing document entitled **STIPULATION BETWEEN DEBTOR AND BUS DRIVER, LLC FOR 1. LIMITED RELIEF FROM THE AUTOMATIC STAY; 2. REJECTION OF SALES AGENCY AGREEMENT BETWEEN DEBTOR AND BUS DRIVER, LLC DATED APRIL 18,2013** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **01/08/2016**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

M Hope Aguilar    hope@business-affairs.tv, hope@neuvilleLaw.com
Kenneth G Lau    kenneth.g.lau@usdoj.gov
Elaine Nguyen    elaine@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com
Daren M Schlecter    daren@schlecterlaw.com, assistant@schlecterlaw.com
James R Selth    jim@wsrlaw.net, jselth@yahoo.com;jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com
United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov
Daniel J Weintraub    dan@wsrlaw.net, jamie@wsrlaw.net;vinnet@ecf.inforuptcy.com

**2. SERVED BY UNITED STATES MAIL**:
On **01/08/2016**, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.


**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **01/08/2016**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Personal delivery to Chambers of Hon. Richard Neiter, United States Bankruptcy Court, Los Angeles Division


I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 01/08/2016 | Jamie Barrios | /s/ Jamie Barrios |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012    F 9013-3.1.PROOF.SERVICE